### J. E. JONES ET AL. v. OCTAVIA PYRON ET AL.

(Case No. 4315.)

1. BANKRUPTCY.— Title to land owned by the bankrupt at the time of the adjudication of bankruptcy against him passes to the assignee for the purposes of the trust, though not scheduled, as effectually as though it had been.

2. SAME.— Land thus owned, and not scheduled as part of the bankrupt's estate, if not disposed of by the assignee in bankruptcy, remains after the termination of proceedings in bankruptcy the property of the bankrupt or of his heirs.

3. SAME.— The mere omission to schedule such property constitutes no ground either in law or equity for denying to the heirs of the bankrupt the benefit of their title on the termination of proceedings in bankruptcy, as against parties who show no other ground of attack than the failure to schedule it.

APPEAL from Collin. Tried below before the Hon. Joseph Bledsoe.

Action of trespass to try title instituted in the district court of Collin county, brought on the 4th day of March, A. D. 1880, by Octavia C. Pyron, Ella Pyron, Charles Pyron, and a number of others, to recover title and possession of seven hundred and thirty-eight acres in the Sylvester Williams survey. Plaintiffs filed amended original petition on the 18th day of March, A. D. 1880.

To this petition defendants, on the 2d day of June, A. D. 1880, filed their plea of not guilty, and afterwards, by leave of the court, on the 12th day of January, A. D. 1881, filed their amended original answer, in which, in addition to the plea of not guilty and a general denial, they alleged that plaintiffs claimed the land as heirs at law of Charles L. Pyron, deceased; that if Charles L. Pyron ever owned the land, he acquired title to the same long prior to the year A. D. 1867, and that Pyron, on the —— day of ——, A. D. 1868, filed his petition in the district court of the United States for the western district of Texas, at Austin, praying to be adjudged a bankrupt under an act of congress entitled " An act to establish a uniform system of bankruptcy throughout the United States," approved March 2, A. D. 1867; that there was attached to said petition, schedules of the debts and names and residences of the creditors of Pyron, together with a schedule of all the property owned in any manner by him, and that the schedule was verified by the affidavit of Pyron, as was required by the act of congress; that the debts of Pyron exceeded the sum of $20,000, while his property did not exceed in value the sum of $1,000, and that the land sued for was not described or mentioned in any of Pyron's schedules. That afterwards, on the —— day of ——, A. D. 1868, Pyron was adjudged a bankrupt by said court, and all of his property transferred by the

register to one P. De Cordova as his assignee. That afterwards, on the —— day of ——, A. D. 1869, Pyron filed his petition in said court, in which he represented that he had surrendered all of his property of every character, and performed all things required of him, and prayed to be discharged from all of his debts and liabilities, all of which was verified by his affidavit. That the court afterwards, on the —— day of ——, A. D. 1869, granted Pyron his discharge as prayed for. Defendants further answered, that, if Pyron had ever owned the land, the title thereto had in some legal manner passed out of him prior to the bankruptcy proceedings, and pleaded the same as an outstanding title; that if in fact the title was in said Pyron at the date of bankruptcy proceedings, his representations to the bankrupt court, by means of which he procured his discharge from his debts, was such a gross fraud upon the law and the court, that his heirs were precluded thereby from recovering the land, without showing that the failure of their ancestor to insert the same in his schedules was a mistake. Defendants further pleaded that they purchased the land in good faith, and paid the purchase money therefor long before they had ever heard of plaintiffs' claim. That at the time of their purchase there was recorded on the record of deeds of Collin county, a deed to said land from Charles L. Pyron to A. P. Thompson, dated August 6, A. D. 1867, a deed from Thompson to J. R. Connor, and a deed from said Connor to Octavia C. Pyron and D. W. Heard, from whom defendants purchased.

The cause was tried on the 13th day of January, A. D. 1881, and resulted in a verdict and judgment in favor of plaintiffs for the land and costs of suit, and that defendants were purchasers in good faith and entitled to pay for their improvements.

*Richard Maltbie*, for appellants.

I. The declarations of Charles L. Pyron, made under oath in the bankruptcy proceedings, tended to prove that he did not own the land in controversy at the time of his death. 1 Phil. Ev., p. 378, near bottom; id., p. 453, and note middle of p. 461; Hill and Cowan and Edwards' Notes; 1 Greenl. Ev., p. 240, sec. 210, and note 3; id., p. 111, sec. 97; Houston *v.* McClung, 8 W. Va., 135, and U. S. D., New Series, Vol. 7, p. 325, sec. 150; Fulton *v.* Gracy, 15 Gratt. (Va.), 314, and U. S. D., Vol. 5, p. 762, sec. 5708; Hunt *v.* Horan, 56 N. H., 87.

II. In the action of trespass to try title, all evidence tending to raise a presumption that the title under which plaintiff claims is extinct is admissible for a defendant in possession. Tyler on Eject-

ment and Adverse Enjoyment, p. 564, and also the above authorities.

III. Parties who make representations in a court of justice, by reason of which such court is induced to adopt a particular course of proceeding, will not be heard to deny the truth of such representations, unless shown to have been a clear and innocent mistake. 1 Phil. Ev., p. 371; id., p. 453, and note middle of p. 461; 1 Greenl. Ev., p. 240, sec. 210.

IV. Public policy forbids that a court of justice should lend its aid to a person to recover property which such person had withheld from his creditors by reason of a fraud practiced upon the courts of the country. R. S. of U. S., secs. 5016, 5017, 5113, 5114, 5132.

V. The bankrupt proceedings are an estoppel of record, and without explanation preclude plaintiffs from maintaining their suit.

VI. An official record is always admissible in evidence, and without explanation is conclusive. 2 Parsons on Contracts, pp. 788, 789; Gardner v. Bean, 124 Mass., and U. S. D., Vol. 10, New Series, pp. 274, 275, sec. 2; Deadrick et al. v. Armour, 10 Humph., 588, and especially p. 598.

GOULD, CHIEF JUSTICE.— The widow and heirs of Charles L. Pyron sued to recover seven hundred and thirty-eight acres of land, and the evidence adduced by them was sufficient to show title in said Pyron, through a deed dated in 1844, and to support the judgment recovered by plaintiffs. That judgment must stand, unless the court erred in excluding evidence of certain proceedings in bankruptcy, showing that in 1868, Pyron, on his own petition, was adjudged a bankrupt; that this seven hundred and thirty-eight acres of land was not scheduled by him as part of his property; that he scheduled an indebtedness of $20,000, whilst his list of property was of small value. These proceedings also showed the discharge of Pyron in 1869, and that his schedules and his application for discharge were verified by his affidavit. The defendants adduced no evidence of title in themselves, but relied on these proceedings as estopping the heirs of Pyron from claiming that he owned said land at the time of his bankruptcy, or at the time of his death, and as showing an outstanding title in some person unknown.

The omission of the land in the list of the bankrupt's property is not alleged or shown to have misled the defendants or those under whom they claim to their injury. Whether the omission was intentional, for the purpose of defrauding his creditors, or was caused by forgetfulness or inadvertence, or by the fact that Pyron had parted

with his interest, it is not perceived how it could equitably estop him or his heirs from claiming the land, unless as against some one who was deceived by the omission and induced thereby to purchase from some other claimant. Clearly the elements of an equitable estoppel are wanting.

So, also, of an estoppel by record or by deed. The schedule was not an adjudication of the title, nor was it a deed or conveyance; nor was the title in any way dependent on it. Moreover the defendants in no way connect themselves with the bankruptcy proceedings. Stuvens v. Earles, 25 Mich., 41, is a case much in point. In that case it was held that the heirs were not estopped by the omission of the bankrupt ancestor to schedule a tract of land. It was also held, that, on the termination of the proceedings in bankruptcy, all property undisposed of reverts to the bankrupt or his estate. The assignment is regarded as a trust or a power for a specific purpose, and when that purpose is fulfilled it is held that the power or the trust estate terminates. "The title," it is said, "must be somewhere, and under the circumstances it is necessary to regard it as in the only party interested."

To the like effect on this latter point is the case of Conner v. Southern Express Co., 42 Ga., 38. Referring to a claim in suit where the plaintiff, pending the suit, had passed through bankruptcy, and the bankruptcy proceedings being slow, sought to carry on the suit, the court say: "We must conclude that for some proper reason the title to this claim has reverted to the bankrupt. *Prima facie* that is true, because the assignee has not undertaken to control it. . . . The presumption is that the judgment of the bankrupt court discharging the bankrupt and the assignee closes up the business."

Appellant cites the case of Deadrick v. Armour, 11 Humph., 588, where a different opinion as to the effect of the omission to schedule is expressed. A bankrupt, entitled in right of his wife to a share of an estate, had failed to schedule his claim, and the question of the effect of this failure on his rights came up after his wife's death in a suit by other claimants of the estate for partition. The failure of the assignee to sue is treated as an abandonment by him, but not as conferring any rights on the bankrupt. Of him it is said: "He is repelled and estopped by the assignment." No authority is cited, and no attempt is made to show on principle how the bankrupt was estopped. The case of Stuvens v. Earles appears to have been carefully considered, and seems to us founded on correct principle, and to be the better authority.

The position is also taken that the evidence was admissible as tending to show that Pyron did not own the land at the time of his death. It is enough to say that the evidence was in itself wholly insufficient to establish that Pyron did not own the land at his death, and there was no proffer to connect it with other evidence on that point. Had it been admitted in the absence of other evidence, a verdict for the defendants would not have been allowed to stand. The exclusion under the circumstances was not erroneous, and even if it were, the error operates no injury. Had the defendants undertaken to establish the genuineness of the deed from Pyron to Thompson, which they had pleaded, and the genuineness of which had been denied under oath, the question of the admissibility of the evidence, and of the effect of its exclusion, would have been very different.

The suggestion that public policy forbids a court of justice from permitting the recovery by the bankrupt or his heirs of property which he failed to schedule, seems founded on a question asked by Lord Tenterden during the argument of Nichols v. Downes, 4 Carr. & Payne, 330 (19 E. C. L., 539). The decision, however, was merely that the schedule was admissible evidence to defeat the collection of a debt which the insolvent was seeking to recover, and, in connection with other proof, might be sufficient. Aside from this, the present case is distinguishable from that, as involving the title to land. The policy of the law protects the title to land by surrounding it with greater safeguards than are thrown around personal property or the mere ownership of a debt. The legal title to land should command the protection of the law, unless it be proved that, on settled principles of law or equity, the right must be denied.

Our conclusion is, that the title of Pyron, notwithstanding the failure to schedule the land, passed to the assignee as effectually, for the purposes of his trust, as did the title to any other property of the bankrupt; that the land not having been disposed of by the assignee, the title thereto, after the termination of the bankruptcy proceedings, remained in Pyron or his heirs; and that the mere fact that the land was not scheduled constituted no valid ground, either at law or in equity, for denying to these heirs the benefit of their title as against parties who fail to show any other ground of defense.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered April 25, 1882.]