R. N. SAUNDERS ET AL. *v.* M. A. MITCHELL ET AL.

1. LUNATIC. *Judgment against guardian. Sale of lands under execution.*
    Under the Code of 1857, the sale of the lands of a lunatic under execution issued on a judgment against his guardian, is a nullity, and the purchaser acquires no title. The sale of lands of a lunatic for payment of debts contracted while he was of sound mind could only be made by order of the probate court.

2. SAME. *Adjudication of bankruptcy. Voluntary petition.*
    Notwithstanding the appointment of a guardian by the probate court, it was within the province of the bankrupt court to make an adjudication of bankruptcy on the petition of a lunatic, as the action of the probate court only established the fact of lunacy at the time of its decree.

3. SAME. *Bankrupt decree. Error of fact.*
    A decree of the bankrupt court cannot be collaterally attacked by showing that a party was a lunatic at the time of its rendition. In such a case the court proceeds in error of fact, and the mistake could only be pointed out by writ of error *coram nobis.*

4. BANKRUPT. *Discharge. Surplus. Re-investment of title.*
    The bankrupt act made no provision for the re-conveyance by the assignee to the bankrupt of any surplus of the estate which might remain after the payment of the debts proved against it. Such surplus of necessity belongs to the bankrupt, and there is a reverter of the original title to the bankrupt by operation of law. But such reversion ought not to be presumed or found, in the absence of clear and full proof of the complete execution of the purposes for which the property is held by the assignee.

5. SAME. *Presumption. Heirs-at-law. Ejectment.*
    Whether the lapse of sufficient time to raise the common law presumption of payment of all claims would be sufficient to authorize a recovery of a surplus by the bankrupt or his heir-at-law in an action of ejectment. *Query.* But if it should also appear that the debts have actually been satisfied, or if there is clear proof of an abandonment of the property by the assignee and creditors, such action might be maintained.

6. SAME. *Omission of assets.*
    Where land has been omitted by the bankrupt from his schedule of assets, and

the estate actually surrendered was insufficient to pay the costs of the bankrupt proceedings, and there is nothing to show that either the assignee or the creditors had any notice of the bankrupt's right to the land omitted, no presumption of abandonment of the property or surrender of debts can arise, and neither the bankrupt nor his heirs-at-law are entitled to recover the land.

APPEAL from the Circuit Court of Alcorn County.

HON. J. W. BUCHANAN, Judge.

On the 17th of March, 1866, W. L. Duncan was by the Probate Court of Tishomingo County adjudged to be insane, and T. D. Duncan appointed his guardian. At the time of the inquisition of lunacy there were pending against the said W. L. Duncan, in the circuit court of said county, several suits, to which the said T. D. Duncan, guardian, was made a party by *scire facias*, and in these, judgments for large amounts were entered in September, 1866, against T. D. Duncan, guardian, and upon the executions which followed, it appears by the return certain real estate, including the land in controversy in this suit, were pointed out by the guardian as the property of W. L. Duncan, and levied upon and sold, on the 4th day of March, 1867, and one A. B. Dilworth became the purchaser, entered into possession, and afterward conveyed the land by deed to appellees, who in 1873 erected on the part in controversy valuable improvements. On March 5, 1868, the said W. L. Duncan was upon his own petition adjudicated a bankrupt, and J. E. Gillenwater was, on the 7th day of December, 1868, duly appointed his assignee with the usual order, vesting in him the property of the bankrupt. The said W. L. Duncan with his petition in bankruptcy, filed a schedule of his debts, amounting to forty thousand dollars, and also a schedule of his assets, valued at about twelve hundred dollars, but did not include therein or anywhere refer to the property involved in this suit. On the 20th of January, 1869, said W. L. Duncan obtained his discharge from said bankrupt suit, and in August, 1876, died intestate, leaving as his heirs the appellants, who sue in ejectment, to recover the land in controversy, claiming it as heirs of said Duncan. Judgment was rendered against them in the court below and they appeal to this court.

*Houston & Reynolds,* for the appellant.

1. Guardians of lunatics have the same power and authority over the lands of their wards as executors and administrators have. Code 1857, 71–80. The lands of the lunatic cannot be sold under a judgment rendered against his guardian. They can be disposed of alone by the guardian acting under the decree of the probate or chancery court. *Morrison* v. *Kristra,* 55 Miss. 71; *McGee* v. *Wallis,* 57 Miss. 636. The sale under the judgment did not pass any title.

2. The land in controversy in this suit was never sold by the assignee in bankruptcy, was never administered in any way in that court. The estate has been finally settled. The assignee and creditors are now barred from any proceeding to reach this land and administer it in the bankrupt court. The adjudication in bankruptcy vests the title of the bankrupt in the assignee, as trustee for creditors and the bankrupt. He can sell to pay debts and expenses, but if there are no debts and expenses, or if they are satisfied or barred, what becomes of the property not disposed of? There is no law which vests it in the assignee, and none which authorizes a reconveyance to the bankrupt. What becomes of it? The question is fully answered in the authorities cited, and the principle announced, that the property re-vests in the bankrupt and at his death in his heirs, and the principle is sustained by reason and authority. Bump on Bank. 7th ed., 447, note 6, § 5044. *Stevens* v. *Earles,* 25 Mich. 40 (3 Post.); *In re Hoyt,* 3 Bank. R. 55; *Atwood* v. *Thomas,* 60 Miss. 162.

*C. E. Stanly,* on the same side.

1. The defendants could not acquire the title from the sheriff's sale under the judgment against the guardian, because the judgment was void. The circuit court had no jurisdiction. The judgment to be effective should have been against William L. Duncan in person, not against his guardian, T. D. Duncan. While W. L. Duncan's lunacy did not divest him of the title to his property, yet his estate should have been all administered and wound up by the probate court. Const. 1857, Art. IV, Sec. 18. The jurisdiction of the probate court is exclusive over matters

confided to it by the constitution. *Blantin* v. *King*, 2 How. 856 ; *Carmichael* v. *Browder*, 3 How. 253 ; *McRae* v. *Walker*, 4 How. 455 ; *Powell* v. *Burrus*, 35 Miss. 605. The court of probate is a court of original and general jurisdiction as to matters confided to it by the constitution. *Pollock* v. *Borie*, 43 Miss. 141 ; *Frisby* v. *Harrison*, 30 Miss. 452 ; *Hardy* v. *Gholson*, 4 Cush. 70.

2. Are appellants precluded from recovery by the pretended bankruptcy of William L. Duncan ? He was adjudged a lunatic by the Probate Court of Tishomingo County in March, 1866, and a guardian appointed. This was conclusive proof of fact of lunacy. 12 Barb. 235 ; 14 Barb 169. After a general derangement has been shown it is then incumbent on the defendants to show that the party who did the act *was sane* at the very time it was performed. *Jackson* v. *Vandezen*, 5 John. Ch. 144–159 ; *Jackson* v. *King*, 4 Cow. 207 ; *Clark* v. *Fisher*, 1 Paige 171. If the title by any means could have passed to the assignee, when the assignee was discharged, and the bankrupt discharged the property not administered, was not Duncan reinvested with the title ? *Connor* v. *Southern Express Co.*, 42 Ga. 37.

*Whitfield & Young*, for the appellees.

1. The judgments and decrees of a bankrupt court are conclusive and cannot be impeached collaterally, except for want of jurisdiction in the court. *Michaels* v. *Post*, 21 Wall. 427; *Sloan* v. *Lewis*, 22 Wall. 150; *Cooper* v. *Raynolds*, 10 Wall. 308; *Stevens* v. *Brown*, 49 Miss. 597. If the sanity of the bankrupt was essential to the validity of the judgment, then since insane persons do frequently recover, or have lucid intervals, the presumption that *ominia rite acta* applies and protects the judgment. But an insane person can take the benefit of the bankrupt law. 3 Par. Cont. 461 ; Saunders Pld. Evid., vol. 1, part 1 ; 1 Chitty Pld. 18 ; 1 Tidd. Prac. 93 ; Chitty Pld. 551, note ; *Foster* v. *Jones*, 23 Ga. 168 ; *Norton* v. *Harding*, 3 Oregon 361 ; *Wood* v. *Bayard*, 63 Penn. St. 320.

2. If then the proceedings adjudging W. L. Duncan a bankrupt were not utterly void, his title to the land in question was thereby by operation of law, absolutely vested in Gillenwater, his assignee. Bankrupt Act; *Glenney* v. *Langdon*, 98 U. S. 20 ; 3 Pars. Cont.

472–3; *Palmer* v. *Andrews*, 4 Bingham 348; *Moyer* v. *Deweny*, 103 U. S. 303; *Trimble* v. *Woodward*, 102 U. S. 647.

3. The argument of the plaintiff in error seems to be that the fact that the assignee has not asserted a claim to the property although in consequence of the false inventory filed, raises a presumption that he has abandoned or resigned his trust and title, and that such abandonment operates to cancel the judicial proceeding by which he acquired his title, and the property reverts to the bankrupt for the want of another claimant, because he ought to have what his creditors do not claim. The error in this is manifest. See *Atwood* v. *Thomas*, 60 Miss. 162, which is conclusive of this case as to effect of bankruptcy proceedings.

*Green & Boone*, on same side.

1. In the first place we insist that the judgment is only informal or voidable and not void, and if not void the title passed to Dillworth. *Borzman* v. *Brann*, 6 How. 349; *Hoggatt* v. *Montgomery*, Ib. 93; *Hancock* v. *Collins*, 1 Cush. 398. It will be observed that the judgment in this case is not against T. D. Duncan *de bonis proprius*, but that the judgment and execution are against the estate of W. L. Duncan.

2. Appellants are estopped. *Dixon* v. *Green*, 2 Cush. 612; 2 Cush. 114; Bigelow on Estoppel, § 16, note.

COOPER, J., delivered the opinion of the court.

The sale of the land of the lunatic under an execution issued on a judgment against his guardian was a nullity and the purchaser acquired no title. After the appointment of a guardian by the probate court, the statute required that the lands of the lunatic should be sold for the payment of his debts, contracted when he was of sound mind, in the same manner as sales of land of a decedent were required to be made for the payment of his debts, and such sales could only be made by order of the probate court. Code of 1857, pages 465, 445, 446. Notwithstanding the appointment of a guardian by the probate court, it was within the power of the bankrupt court to make an adjudication of bankruptcy on the petition of the lunatic, for though he had been adjudged a lunatic,

it may be that he afterward recovered or had lucid intervals. By the decree on the inquisition of lunacy against Duncan, it was conclusively settled that he was a lunatic at the time of the decree, but not that he always would be. *Breed* v. *Pratt*, 18 Pick. 115; *Stone* v. *Damon*, 12 Mass. 488. The bankrupt court was a court of record, and decrees of such courts cannot be collaterally attacked by showing that a party plaintiff or defendant was a lunatic at the time of its rendition. *Mansfield's Case*, 7 Coke (Part 12); Shelford on Lunacy 243; *Wood* v. *Bayard*, 63 Penn. St. 320. If the bankrupt was a lunatic at the date of the adjudication of bankruptcy, the bankrupt court proceeded in error of fact, and the mistake should have been pointed out by a writ of error *coram nobis*. The principal question presented is whether by reason of the discharge of the bankrupt and the assignee, and the lapse of time since intervening, there had been a reinvestment of the title of the bankrupt to the land sued for, in his heirs-at-law, so as to enable them to recover in ejectment against one having no title. The land sued for was not included in the schedule of assets filed for the bankrupt, but that was not necessary to transfer the title to the assignee, the title passed to the assignee by reason of the adjudication of bankruptcy, the appointment of the assignee and the conveyance made by the register. Bankrupt Act of 1867, § 14. Whatever title the bankrupt had passed to his assignee, the question is has it ever passed back to him or his heirs? In *Steevens* v. *Earles*, 25 Mich. 40, it was held that the bankrupt was entitled to the surplus of his estate remaining after the payment of all debts proved against it, and after the lapse of thirty years it was presumed that all debts had been discharged, and the heirs of the bankrupt were permitted to recover in ejectment lands which had not been returned by the bankrupt on his schedule. On the other hand, it was held in *Robinson* v. *Denny*, 92 Ala. 457, that the heirs-at-law of a bankrupt could not maintain an action to recover lands which belonged to him at the time of his bankruptcy, although it was shown that the bankrupt and his assignee had been discharged, *and that all debts due by the bankrupt had been paid or legally satisfied,* the court saying: "It is doubtless true, that if

after the payment of the debts, which may be proved against the estate of a bankrupt, a surplus remains in the hands of the assignee, he holds it in trust for the bankrupt, and that on a proper application to the court of bankruptcy, payment or a transfer of it will be decreed. Until the decree is obtained the title remains in the assignee, and if the surplus consists of rights in action, he alone can maintain suit founded upon them. No other court can properly inquire whether the debts of the bankrupt are satisfied, and what are his rights and equities, or the rights and equities of the assignee or of creditors."

The bankrupt act made no provision for the reconveyance by the assignee to the bankrupt of any surplus of the estate which might remain after the payment of the debts proved against the estate, but such surplus of necessity belongs to the bankrupt. It cannot be held by the assignee for he is a mere officer of the court and holds the title officially not personally. It cannot be appropriated by the creditors, for they never have any right to the property itself, but only to have its proceeds applied to the payment of their demands, and when these are satisfied they are strangers both to the bankrupt and to the estate. Since the law makes no provision for a reconveyance of the estate, and the bankrupt is the only party entitled thereto on the execution of the purposes for which it is taken, it seems to us that there is reverter of the original title to the bankrupt by operation of law. But such reversion ought not to be presumed or found, in the absence of clear and full proof of the complete execution of the purposes for which the property is held by the assignee.

Where, as in the Michigan case, there had been a lapse of sufficient time, twenty years, to raise the common-law presumption of payment of all claims, we are not prepared to say that this would not be sufficient to authorize a recovery of the land in an action of ejectment brought by the bankrupt or his heirs. If also it should be made to appear, as in the Alabama case, that the debts had been actually satisfied, or if there was clear proof of an abandonment of the property by the assignee and creditors, we are unable to see why such action might not be maintained.

But it cannot be said that the assignee or creditors of a bankrupt have abandoned property the existence of which was unknown to them, for an abandonment implies an election not to take the property, and an election implies knowledge of the thing abandoned.

In this case it is shown that the property sued for was not put on the schedule by the bankrupt. The estate actually surrendered was insufficient to pay the costs of the bankrupt proceedings, and there is nothing shown from which it may be inferred that either the assignee or the creditors had any notice of the bankrupt's right to the land. The bankrupt was by law charged with the duty of making a full disclosure and surrender of all the property owned by him. This he failed to do. · Proof of debts by the creditors would have availed them nothing, if the whole estate had consisted of the property returned by the bankrupt, and their failure to prove their claims under such circumstances cannot be said to be a surrender of their debts. They were warranted in assuming that there was no other estate than that described in the schedules, and neither the bankrupt nor his heirs ought under these circumstances to be permitted to say that the creditors or the assignee abandoned the property to him or to them.

The defendants may not be entitled to retain the property, but neither are the plaintiffs entitled to recover it. *Buckingham* v. *Buckingham*, 36 Ohio St. 68.

*The judgment is affirmed.*

CHALMERS, J., *dubitatur.*

I doubt, without dissenting from the conclusion reached.

It is manifest from the record that the bankrupt omitted the land in controversy from his schedule because ignorant of his own superior title to it and with no fraudulent design. Many years have now elapsed since his own discharge in bankruptcy and that of his assignee. There is no intimation of any intention to proceed further in bankruptcy by any creditor, nor indeed any proof that there are any existing creditors. I doubt under these circumstances whether the present holders of the property can raise the question of his former bankruptcy and his loss of title thereby.

If they were marked trespassers, I would say with confidence that they could not, but they hold, and have held for many years under color of title, and as plaintiffs (the heirs of the bankrupt) can only oust them on the strength of their father's title, which is constructively *in custodia legis* for the benefit of any possible creditors through some assignee to be hereafter appointed, it may be that my associates have reached the correct conclusion.