## Isaiah F. Laing v. Solomon T. Fish and Maurice H. Mandelbaum.

### Gen. No. 11,798.

1. BILL OF COMPLAINT—*when properly dismissed. A* bill of complaint is properly dismissed where several pleas are filed thereto to which the complainant elects not to reply, if any of such pleas are good in law.

2. RES JUDICATA—*when appears.* Where it appears that the right and title to an accounting sought has been adjudicated against the complainant in a like proceeding finally disposed of, decided at a time when such right and title were identical with that existing at the time of the filing of the second suit, a plea of *res judicata* is good.

3. FORMER ADJUDICATION—*what does not affect bar of.* The fact that the claim adjudicated in the first suit could not have been successfully pressed without the filing of a supplemental bill, does not affect the decree therein as a former adjudication.

4. BANKRUPT—*when, may not prosecute claim after discharge.* A bankrupt who during the pendency of the bankruptcy proceeding

failed to disclose an existing right of accounting to the detriment of his creditors, cannot after his discharge urge that the title to such concealed asset has revested in him and maintain a proceeding to collect the same.

5. ABANDONMENT OF ASSETS—*what essential to establish.* An abandonment of assets by an assignee cannot be established in the absence of a showing of an election by such assignee so to abandon.

Bill for accounting. Appeal from the Circuit Court of Cook County; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed March 13, 1905.

CHARLES A. BUTLER, for appellant.

NEWMAN, NORTHRUP, LEVINSON & BECKER, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Cook County, dismissing, for want of equity, appellant's bill for an accounting.

Two pleas, one of *res judicata,* and the other that the complainant had no title to the interest or indebtedness concerning which he demanded by his bill an accounting, had been filed to said bill. The chancellor allowed said pleas and each of them. The complainant elected not to reply to them, and the bill was thereupon dismissed at his costs.

The only question before us is whether or not these pleas are good. If either of them is good and was properly allowed, the bill was rightly dismissed.

The bill in this cause sets up an agreement between the complainant and Fish, one of the defendants, by which agreement complainant was to manage a department of Fish's business, known as the cheese department, and receive therefor $1,300 a year, and as additional compensation 50 per cent of the net proceeds of the said department after deducting, first, $2,500 for rental of space used by the department, and, secondly, the general expenses of the department. It alleges that said department commenced business

Laing v. Fish.

November 1, 1893; that Mandelbaum, the second defend-
ant, joined Fish as a co-partner, and ratified the agree-
ment with complainant November 14, 1897; that said de-
partment was conducted under said agreement until May 1,
1900, when the agreement expired and was not renewed;
that the business remains unsettled between the said de-
fendants and the complainant, and defendants refuse to ad-
just it; that complainant on his own petition, filed May
31, 1899, was adjudged a bankrupt on June 7, 1899; that
on July 6, 1899, E. B. McKey was elected trustee of any
property in which complainant on May 31, 1899, had any
right, title or interest; that on February 13, 1900, com-
plainant was discharged from payment of his liabilities
scheduled by him in the bankruptcy proceedings, among
which was a liability scheduled as $1,950, alleged to be
due said defendants; that on November 10, 1900, the
trustee in the bankrupt estate filed his final report, that
he had neither received nor paid any moneys on account
of said estate, and asked to be discharged of his trust; that
on November 10, 1900, an order was entered discharging
said trustee; that by virtue of this, and under the Bank-
ruptcy Act, complainant became revested in and with any
interest which he may have had on May 31, 1899, in any
assets, effects or property; that on May 23, 1900, com-
plainant filed a bill for accounting in the Circuit Court
against the defendants, alleging a large sum of money due
complainant thereunder; that on July 7, 1900, defendants
filed a plea to said bill, setting up that by virtue of the
filing of the petition in bankruptcy aforesaid, the alleged
rights of complainant in and to an account and settlement
of any indebtedness due said complainant from said de-
fendants on June 7, 1899, became vested in said trustee
in bankruptcy; that said trustee had entered into the per-
formance of his duties at the time of his appointment and
had, up to the time of filing said bill, acted as such trus-
tee; that on December 18, 1901, said plea was sustained,
and that upon a true settlement of the accounts of said
department from November 1, 1893, to June 7, 1899, it

will appear that there is a large balance due complainant from said defendants.

The prayer of the bill is for an account from November 1, 1893, to June 7, 1899, and for a decree that the defendants pay complainant anything appearing to be due him on such accounting. The first plea filed to this bill sets up the former bill of complainant filed on May 23, 1900, praying for an accounting for the entire period from November 1, 1893, to May 23, 1900, and the proceedings thereunder, including the plea of the defendants to said bill on July 7, 1900, the argument of said plea on December 17, 1900, and a decree on that date adjudging the plea good and sufficient in law, allowing the same, and finding that the trustee in bankruptcy became vested as of June 7, 1899, with the title of said Laing to every claim said Laing had on said June 7, 1899, against said defendants, including any right to an accounting with them, and to any balance due him from them on said June 7, 1899, and ordering that said bill as to such parts as prayed for relief or discovery from said defendants in respect to any such rights accruing from them prior to June 7, 1899, be dismissed. The said first plea further sets up that said order and decree so entered on December 17, 1901, still stands in full force and effect, not vacated, reversed, or otherwise annulled, and that the said residue of said last mentioned bill of complaint not dismissed by said last mentioned order and decree is still pending and undetermined. The first plea, therefore, is one of *res judicata*.

The second plea filed to this bill sets up the bankruptcy proceedings as hereinbefore recited; that the trustee in said proceedings became vested with the title of said bankrupt to all his estate as of June 7, 1899, including any supposed claim said bankrupt had against these defendants and any supposed right for an account with these defendants, and in and to any supposed balance due him from them; that on May 31, 1899, said Laing filed with his petition in the bankrupt court his schedule of assets and liabilities, listing as such assets only certain household

goods, animals, books and wagon, of the value of one hundred and sixty dollars, claiming said property as exempt; that said bankrupt therein listed liabilities amounting to $30,471.05, and by an amendment to said schedules filed December 6, 1899, listed an additional liability of $1,923.14, due defendants and as contracted in 1896, 1897 and 1899; that in said schedule of assets said Laing listed no claim against said defendants, and never informed said trustee of any claim against said defendants; and that no notice was ever given said trustee of any claim of said Laing against said defendants; that a claim was allowed in said bankruptcy estate in favor of Lepman & Heggie, the order of allowance of which is still in full force; and that no dividend has been paid thereon, nor any payment made thereon.

As we have before said, if either of these pleas is good, the judgment of the Circuit Court must be affirmed. We think that both are good.

The first one raises the question whether the order in the previous suit entered on December 17, 1901, and recited in said plea, made *rem judicatam* the contention raised by the present bill. We think it did. Appellant seeks to avoid its force by saying that the bill as to which the order was made was filed on May 23, 1901, before the trustee in the bankruptcy proceedings was discharged, and that therefore the disposal of it adjudicated only as of that date, May 23, 1901, the question of the title to the debt alleged to be due appellant. But this is a view that we think cannot be sustained.

When the cause was tried and the order entered on December 17, 1901, the appellant must have been vested with the same title to the accounting that he now possesses. If he has any such right now, he had it then, for the trustee in bankruptcy was discharged on November 10, 1900, thirteen months before, and no proceedings had been had in the bankruptcy cause in the interval.

Complainant claims that the right to the accounting and any balance shown by it to be due him, for the period from

November 1, 1893, to June 7, 1899, passed out of him to his trustee in bankruptcy on the latter's appointment, but revested in him on the trustee's discharge on November 10, 1900. If this were so, it was his duty to present his claim to the right to the court on December 17, 1901, on the hearing of the plea to his first bill.

It is unnecessary to pass on the question whether or not this would have required a supplemental bill, for if a supplemental bill was necessary, the failure of appellant to file it does not prevent the operation of the bar of a former adjudication. Hites v. Irvine's Admr., 13 Ohio St. 283.

Appellant's theory seems to be that his original bill showed no ground for relief, and therefore could not be aided by a supplemental bill. Therefore, he argues, he could not have pressed his claim to an adjudication in the first suit, and is not foreclosed by any order therein made. This reasoning is not sound. His bill was good on its face. It was met by the plea that the complainant had parted with his interest to a trustee in bankruptcy. Under appellant's theory in this present case, the discharge of the trustee during the pendency of the bill had revested the interest in the appellant. If he could not have shown this in rebuttal of evidence in support of the plea, concerning which we need express no opinion, then the case for a supplemental bill was presented. He could have shown by such supplemental bill, under his theory of the effect of the Trustee's discharge, that since the filing of the original bill his interest had been enlarged and that instead of being entitled as the court found only to an accounting from June 7, 1899, to May 1, 1900, he was entitled to it from November 1, 1893, to May 1, 1900.

The same claim of right he now presents was the claim of right he made in the former original bill, and the same right which he has now, if any, he had before that cause was heard and adjudicated. Therefore he should have filed a supplemental bill, if such supplemental bill was necessary to make good his alleged cause of action. It was "a lawful means within his control," and if he failed to use it "pur-

posely or negligently" he "will not afterward be permitted to relitigate the same matters between the same parties, nor to deny the correctness of the former determination." Covington & Cincinnati Bridge Co. v. Sargent, 27 Ohio St., 233, 239; Dimock v. Revere Copper Co., 117 U. S., 565.

It is true that it has been held in England that a supplemental bill will not do, and that another original bill is necessary where the complainant in a suit involving a title to land is shown to have no such title as he describes in his bill, and becomes by purchase, pending the suit, the owner by an entirely different title; but even if this is to be considered the rule in this State, the distinction is obvious between such a case and the one at bar.

But it is not necessary to develop further such distinction, or to discuss longer this first plea. We are also of opinion that if the representation of the trustee's discharge prior to the decree of December 17, 1901, was made to the Court on the hearing of the first bill, it was properly disregarded, and if it was not so made then, that if it had been made, it *ought* to have been disregarded as in no wise changing the situation. In order words, we regard the second plea to the present bill as also a good defense to it.

The contention of the appellant amounts to this: that a bankrupt may, by his pleadings in the bankruptcy court, represent that he has not assets; that he may be discharged on that representation from his debts, without the payment of anything on them; and that then, although creditors have filed and proven claims against him in the bankruptcy court, on which they have received no dividend, the bankrupt may, on the ground that the trustee has also been discharged by an order of court from further duty, claim and prosecute a suit for assets, the existence of which he all the time knew, but concealed, and that he may then hold them free from interference by his former creditors. We should not naturally expect such a contention to be justified by authority, nor do we find it to be so. The cases cited by the appellant to sustain this contention are all distinguished by their facts from the case at bar. They are cases in which the trustee,

exercising a privilege allowed him by the law, never took the property or assets involved because they were burdened by some incumbrance which made them a disadvantage rather than an increment to the estate, under which circumstances, as the title never left the bankrupt, he of course held it after his trustee had been discharged; and cases where the purposes of the trust in the trustee were accomplished, by the extinguishment by composition or payment of all debts proven in the estate. If there were no debts proven in the required time, it followed equally that the purposes of the trust, so far as the trustee was concerned, had been accomplished when that time had passed. In such cases it has been held logically and properly that as the trustee then holds in a bare trust for the bankrupt, no conveyance by him is necessary; the property revests without such a conveyance. In the first class of cases indicated falls Burton v. Perry, 146 Ill. 71, and Brookfield v. Stephens, 40 Arkansas 366; in the latter, Boyd v. Olvey, 82 Ind. 303, Steevens v. Earles, 25 Mich. 41; Reynolds v. Crawfordsville Bank, 112 U. S. 405, and probably (if one may judge from the authorities therein cited) King v. Remington, 36 Minn. 15.

The language of the Supreme Court of Texas on this subject, in Herndon v. Davenport, 12 S. W. Reporter, 1111, is merely a dictum, entirely unnecessary to the decision of the case, and in Jones v. Pyron et al., 57 Texas, 43, it does not appear whether or not there were debts proven and left unpaid or uncompromised; but the court, alluding to the case of Nichols v. Downes, 4 Carr & Payne, 330, in which Lord Teuterden has asked, "Can a man be allowed to say in a court of justice that money is due to him when he has not put it into his" (bankruptcy) "schedule?" says: "The present case is distinguishable from that as involving the title to land. The policy of the law protects the title to land by surrounding it with greater safeguards than are thrown around personal property or the mere ownership of a debt."

It may be noted that all the cases cited by appellant pertain to land titles, and that in one of them the bankrupt is spoken of as having a technical estate in reversion, subject

to defeat by the action of the bankruptcy assignee. The fact that the question is of a land title is also specifically alluded to by the Supreme Court of Michigan in Steevens v. Earles, *supra.*

In the case at bar the trustee cannot be said to have elected to abandon the property or right in question, because it is set up in the plea that he was never informed of it, and further alleged that it was not scheduled among the bankrupt's assets, and that by his schedules the bankrupt, without a suggestion of a set-off, represented himself as indebted to the appellees.

Some showing of an election of the assignee to abandon an asset is necessary if such abandonment is relied on. Buckingham v. Buckingham, 36 Ohio St. 68; Dushane v. Beall, 161 U. S. 513; Saunders v. Mitchell, 61 Miss. 326, 328.

It also appears in the case at bar, by the plea that a claim of creditors was proven in the bankrupt estate, that the allowance of it is in full force and that no payment has been made on it. Therefore the cause at bar does not fall within either of the classes to which the authorities cited by appellant belong. In cases not so falling, authority and right reason unite in declaring that the title which passed to the Trustee will not revest in the bankrupt simply because the trustee is discharged from duty by the bankruptcy court. Saunders v. Mitchell, 61 Miss. 326; Buckingham v. Buckingham, 36 Ohio St. 68.

The decree of the Circuit Court will be affirmed.

*Affirmed.*