**Alex J. Passen et al., Appellees, v. United States Casualty Company, Appellant.**

**Gen. No. 42,302.**

Opinion filed May 5, 1943.

BURT A. CROWE and CARL E. ABRAHAMSON, both of Chicago, for appellant.

ROBERT MCCORMICK ADAMS, of Chicago, for certain appellee.

ABRAHAM LEPINE, FRED GINSBERG and PINES, STEIN & LIPTON, all of Chicago, for certain other appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

Alex J. Passen instituted suit against the United States Casualty Company upon an insurance policy known as a burglary, larceny, theft and robbery policy. Passen's claim was for the loss of jewelry which loss he alleged was covered by the policy. The case was submitted to the court without a jury on a stipulation of facts. Later Fred E. Hummel, as receiver in bankruptcy of Alex J. Passen, asked leave to intervene as a party plaintiff in the suit, which petition was granted. Thereafter the trial court entered judgment for $1,500 in favor of Alex J. Passen for the use of Fred E. Hummel, receiver in bankruptcy. The defendant, United States Casualty Company appeals.

The facts stipulated to by the parties are as follows:

1. On February 20, 1935, the defendant had issued its burglary, larceny, theft and robbery policy No. 824946 to the plaintiff insuring him, amongst other things under Clause 5, Section F, against personal holdup loss on money and securities not exceeding $50.00 and jewelry, watches, clothing and articles of personal adornment and other personal effects in the sum of $1500.00 and which policy was in full force and effect at the time of the loss.

2. On July 23, 1935, the plaintiff was held up and robbed of the following valued articles:

One diamond platinum gypsy ring........$1,300.00
One diamond platinum scarf pin.......... 300.00
One solid gold wrist watch.............. 100.00
Cash ................................. 54.00
                    Total Value........$1,754.00

Due notice of which loss was given to the defendant and proof thereof filed on August 12, 1935, and all other conditions of the policy were complied with.

3. On April 23, 1935, the plaintiff had filed in the United States District Court for the Northern District of Illinois, Eastern Division, his petition in bankruptcy No. 59669 and on April 25, 1935, he was duly adjudicated a bankrupt by said court and on May 21, 1935, one Abraham Simon, was appointed trustee of the said bankrupt estate; that the aforesaid property was not scheduled by the plaintiff in his schedule in bankruptcy, and was not claimed as a part of his exemptions in said proceedings; that on the day of the aforesaid loss by holdup, the bankruptcy was still pending in said court and the said Abraham Simon was the trustee of the estate.

4. That in said bankruptcy proceeding the defendant was duly scheduled by the plaintiff as a creditor and the said defendant appeared in said proceeding and filed its claim in the sum of Three Hundred Eighty-two ($382.00) Dollars in said bankruptcy estate, which claim was duly allowed by the said court and on, to-wit: June 29, 1937, the defendant filed its objection to the plaintiff's application for a discharge, alleging therein that in 1933, the bankrupt for the purpose of defrauding his creditors had transferred certain enumerated property and assets to others and knowingly and fraudulently omitted to schedule the said property in the bankruptcy proceedings; but there was no allegation in the said objection to the plaintiff's discharge in said bankruptcy proceedings of the failure of the plaintiff to schedule the property heretofore described in Paragraph 2; nor that he had fraudulently concealed the said property from the trustee in bankruptcy.

5. Thereafter, this defendant after having assigned its said claim of Three Hundred Eighty-two ($382.00) Dollars for a consideration of One Hundred ($100.00)

Dollars to one Charles E. Cohen, abandoned its objection to the discharge of the plaintiff in the bankruptcy proceedings and on July 26, 1937, the objection of the defendant to the discharge was dismissed and the plaintiff was duly discharged as a bankrupt, pursuant to the bankruptcy laws of the United States in such cases made and provided; that on December 7, 1937, a first and final dividend of ten per cent was declared by Charles Adams, Referee in Bankruptcy, and the sum of Thirty-eight Dollars and Twenty cents ($38.20) was paid to the said Charles E. Cohen to whom the claim of the defendant has been assigned; and on January 12, 1938, the said Abraham Simon, Trustee of the bankrupt estate, was, by the United States District Court for the Northern District of Illinois, Eastern Division, duly discharged and the said bankruptcy proceedings were then and there fully terminated.

It further appears from the record that while the suit of Passen against the United States Casualty Company was pending and before its determination by the trial court, the United States District Court was advised of Passen's claim and loss of this jewelry, it appearing that prior to the alleged holdup and loss of the jewelry by Passen he had filed a petition in bankruptcy in the United States District Court and in his schedule of property owned he had failed and neglected to schedule the lost jewelry in question as an asset in the bankruptcy proceedings.

It also appears that Fred E. Hummel, receiver, in his petition so advised the circuit court and contended that he as receiver had an interest or title to any judgment that might be obtained by Passen. It was the contention of the receiver, Hummel, and of this defendant, that Passen having or claiming to have an ownership in the jewelry at the time of his petition in bankruptcy, even though he failed to schedule it in the bankruptcy proceedings, it became, by process of law, the property of the receiver in bankruptcy, and the trial court in its decision entered judgment in favor

of Passen for the use of Hummel, receiver, thereby holding that Passen was entitled to no benefit or judgment by reason of the loss.

There is no point raised as to the pleadings in this action.

It appears from the contention of the plaintiff, Passen, that the title to all undisposed assets belonging to him at the time of his adjudication as a bankrupt, whether scheduled or not, revested in him upon his discharge in bankruptcy and that therefore he has sustained a loss for which he has a right to maintain this action for indemnity.

The intervening petitioner and party plaintiff, the receiver in bankruptcy, Fred E. Hummel, contended that the jewelry rightfully and legally belonged to the bankrupt's estate even though he failed to schedule it and that this title and ownership is continuing and that the receiver was not relieved of this title or interest by reason of a discharge in bankruptcy of Passen.

It is the contention of the defendant, however, that under the terms of the contract of insurance the policy insured but one person, Alex J. Passen, he being the named insured as provided by the policy; that Passen's title, right or interest in the jewelry ceased upon his petition to become a bankrupt, and that all right, title and interest to this jewelry then became vested and permanently so in the receiver in bankruptcy.

It appears, from a reference to the facts as stipulated to by the parties, that the policy was issued to Alex J. Passen, insuring him against personal holdup loss in the sum of $1,500 on various articles of jewelry and other personal effects; that Passen gave due notice of the loss and filed proof of such loss occurring on July 23, 1935.

It is also stipulated that on April 23, 1935, Passen had filed his petition in bankruptcy and that the jewelry in question was not scheduled by him and was not claimed as a part of his exemptions in the proceedings;

and that on the day of the holdup the bankruptcy matter was still pending in the district court. Also, it was stipulated that in the bankruptcy proceeding the defendant was duly scheduled by the plaintiff as a creditor, and the defendant filed its claim for $382, which was allowed. Also, that thereafter the defendant assigned its claim for a consideration of $100 to one Charles E. Cohen, on July 26, 1937; that the plaintiff was discharged as a bankrupt according to the laws of the United States.

In this action it becomes important whether or not Fred E. Hummel as receiver in bankruptcy was entitled to a judgment, or whether this defendant was, under the terms and conditions of its policy of insurance, obligated to indemnify the receiver. It does not appear from any of the facts that have been stipulated to or any of the evidence in the record, nor is it denied that the plaintiff failed to schedule the property which is the subject-matter of this litigation. It appears from an examination of the authorities cited that they make no distinction as to whether the assets had been concealed or otherwise undisclosed by fraud or inadvertence in determining the right of the bankrupt to take over the undisposed of assets, and there is a case cited in 111 A. L. R. Ann., page 839, where it is stated:

"The question of the rights of a discharged bankrupt in concealed or undisclosed assets arises most frequently in cases involving persons other than his creditors. These persons may be either adverse claimants from whom the bankrupt seeks to recover the property in question, or debtors, against whom he seeks a judgment in his favor. In the former case the undisputed assets consist of some kind of tangible property, such as chattels or land, while in the latter case they are choses in action, such as notes or other contractual obligations. . . . There is considerable confusion among the authorities with respect to the right of a bankrupt to come into court after his discharge and

recover assets of this kind from third persons. . . .

"It is apparent that the many circumstances involved in the cases make it difficult, if not impossible, to lay down any absolute rule with respect to the rights of the bankrupt against third persons in this class of cases. However, an attempt has been made to classify the cases according to whether they uphold what may be called the 'majority' view denying the bankrupt's right of recovery, or what is herein called the 'minority' view, sustaining the bankrupt's right in this regard. . . ."

And continuing on page 840, it is quoted from this authority:

"While as previously noted, each case should be considered with reference to its own particular facts, it may be said that, as a general rule the court favor the view that a bankrupt is not, after his discharge, entitled as against third persons, to assert any rights in the assets not disclosed by him in the bankruptcy proceedings."

There is also cited as authority the case of *Laing v. Fish,* 119 Ill. App. 645, wherein complainant filed a bill for an accounting of the profits of a department in the defendant's store under a contract for management which gave him the right to share in the profits. It appeared that complainant had been adjudged a bankrupt and a trustee elected, and that he was discharged, the court saying:

"The contention of the appellant amounts to this: that a bankrupt may, by his pleadings in the bankruptcy court, represent that he has not assets; that he may be discharged on that representation from his debts, without the payment of anything on them; and that then, although creditors have filed and proven claims against him in the bankruptcy court, on which they have received no dividend, the bankrupt may, on the ground that the trustee has also been discharged by an order of court from further duty, claim and

prosecute a suit for assets, the existence of which he all the time knew, but concealed, and that he may then hold them free from interference by his former creditors. We should not naturally expect such a contention to be justified by authority, nor do we find it to be so. The cases cited by the appellant to sustain this contention are all distinguished by their facts from the case at bar. They are cases in which the trustee, exercising a privilege allowed him by the law, never took the property or assets involved because they were burdened by some incumbrance which made them a disadvantage rather than an increment to the estate, under which circumstances, as the title never left the bankrupt, he of course held it after his trustee had been discharged; and cases where the purposes of the trust in the trustee were accomplished, by the extinguishment by composition or payment of all debts proven in the estate.''

The theory of the defendant in the present proceeding is as stated by its counsel on page five of its brief, namely, that the right, title or interest of Mr. Passen as bankrupt, in his jewelry ceased upon the filing of his petition in bankruptcy. The plaintiff suggests that the general rule of law is that the legal title or ownership of a bankrupt's property vests in the trustee in bankruptcy upon his appointment and qualification, and that such title in the trustee after his qualification relates back to the date of the adjudication in bankruptcy, and it is urged that there is sound basis for such a rule of law under the Bankruptcy Act and the cases, for the reason that the act was drawn and has been generally interpreted with the primary purpose of applying the property and rights of bankrupts for the benefit of their creditors; that the defendant, by its present position seeks to pervert the purposes of the act so as to relieve itself of a contractual obligation and that very evidently to hinder the application of a debtor's assets to the use of his creditors.

It is further urged that there can be no question under the facts that the contract of insurance issued by the defendant insured Alex J. Passen, the bankrupt, against the loss of the jewelry in question; that the policy specifically provided that the insurance should apply to all such property owned by the assured. And it is urged that there can be no question that at the time the insurance was written Mr. Passen, who later became bankrupt, was the owner of the jewelry in question; that there can be no question that at the time he was robbed he was in possession of the jewelry in question. He did not schedule the jewelry and his trustee in bankruptcy was unaware of its presence or his ownership of the same. It is further urged that the risk under the policy as far as Mr. Passen, the bankrupt, and the defendant were concerned remained unchanged; and that the defendant would now avoid its obligation by a shrewd twisting of the legal fiction of ownership.

The courts have not hestitated to modify this general rule of bankruptcy law having to do with the passage of title and ownership of a bankrupt's property and the time of the passage of such title and ownership when to do otherwise would merely serve to stultify the very purpose of the act itself. Reference is here made to the case of *Fuller v. New York Fire Ins. Co.,* 184 Mass. 12, 67 N. E. 879.

This was a suit upon policies of fire insurance issued to one Callender upon his factory property. Thereafter on March 2, 1900, Callender filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. On March 10, 1900, at 12:30 o'clock p. m., a receiver of his estate in bankruptcy was appointed. On the same day, March 10, 1900, at 7:55 p. m., the factory was destroyed by fire. On April 23, 1900, the plaintiff, Fuller, was appointed trustee in bankruptcy and filed suit for the collection of the insurance. The insurance company contended that neither the policies

nor any right of action upon the policies passed to the trustee in bankruptcy, first, because the policies were nonassignable, and second, that upon the adjudication in bankruptcy of Callender, that Callender ceased to have an insurable interest in the property. Judgment was entered for the plaintiff, Fuller, the trustee in bankruptcy, and the insurance company, defendant, appealed.

In meeting the defendant's contention that after Callender had been adjudicated a bankrupt neither the policies nor any right of action thereon went to the plaintiff as trustee in bankruptcy and that Callender, after his adjudication as a bankrupt, ceased to have an insurable interest in the property, the Supreme Court of Massachusetts, after indicating that the policies were in their nature assignable and became the property of the trustee, affirmed the insurable interest of the bankrupt in his property. The court said:

"The next contention is that, upon the adjudication that Callender was a bankrupt, he ceased to have an insurable interest in the property. But neither the policies nor the insured property vested in the trustee at the time of the adjudication. The insured property never vested in the trustee, because it was not in existence at the time of his appointment and qualification. The title to it remained in Callender until it was destroyed by fire, as also did the title to the policies. Hence the destruction of the property changed or ripened the conditional obligation of the insurers into a fixed obligation to pay the amount of indemnity stipulated for in the policy. To hold that this ripening of the obligation made it after-acquired property, which would not vest in the trustee, but which the bankrupt could hold as his own, would be as absurd as to hold that, if goods which he had at the time of adjudication were converted by a stranger to his own use between the time of the adjudication and the appointment of the trustee, the right to maintain trover for

their value would not pass to the trustee, but might be enforced by the bankrupt as after-acquired property. If an unmatured obligation on which there was no right of action at the date of adjudication should mature between it and the appointment of the trustee, the right of action upon it would be one which did not exist until after the adjudication, but there can be no doubt that it would vest in the trustee. In all such cases the new right of action may be compared to a fruit which has grown and ripened during the period of transfer, and which, being upon the branch at the moment when the property vests in the new owner, becomes his. The statute is to be construed in view of its general purpose of applying the property and rights of debtors for the benefit of their creditors, and, while the debtor's property vests as of the date of the adjudication, it yet has the incidents which have become attached to it up to the time when it vests in the trustee upon his appointment and qualification.''

So that when we come to consider the questions that are involved in this case and to determine the question as to the right of action of the receiver in bankruptcy we have to consider the facts as they appear in this record. It has been contended that Mr. Passen, a bankrupt, had sufficient legal title and ownership of the property in question on June 23, 1935, the date he was robbed, to satisfy the terms of the policy and the provisions of the Bankruptcy Act and the law arising thereunder, and therefore to support the judgment herein appealed from.

As between the bankrupt and the defendant he was still in possession of the jewelry and the risk of the defendant had not been increased. As between the bankrupt on the one hand and his creditors and trustee in bankruptcy on the other, strict legal title and ownership may have belonged to the trustee in bankruptcy. However, as between the bankrupt and the defendant, the trustee in bankruptcy having no knowl-

edge of the existence of the property itself nor of the chose in action arising therefrom, its disclosure in the schedules having been inadvertently omitted, there was sufficient legal ownership and title of the jewelry in the bankrupt on the day of the robbery and thereafter of the chose in action arising therefrom, until disclosed to the successor trustee in bankruptcy, to support the judgment of the plaintiff herein.

So it appears from the facts as they are in this record that there was sufficient ownership and title of the jewelry in the bankrupt upon the day of the robbery, and thereafter he had a right of action as against the defendant but having filed his petition in bankruptcy, Fred E. Hummel, additional party plaintiff herein, as receiver in bankruptcy of Alex J. Passen, succeeded to the right to the chose in action.

It appears from this record that the order of the district court authorized Fred E. Hummel, as receiver in bankruptcy to intervene and to become a party to the proceedings in the circuit court of Cook county. The said receiver having, as we have indicated, succeeded to the right of action, was a proper party as additional plaintiff.

From the record as it appears, the order of judgment entered in the circuit court of Cook county in the sum of $1,500 in favor of Alex J. Passen, for the use of Fred E. Hummel, plaintiff herein, as receiver in bankruptcy of Alex J. Passen, or for the use of the trustee in bankruptcy of Alex J. Passen who may hereafter qualify, and against the defendant, United States Casualty Company, a corporation, should be affirmed.

*Affirmed.*

BURKE, P. J., and KILEY, J., concur.